958 F.2d 375
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
William SALAZAR-SOTO, Defendant/Appellant.
 No. 90-3289.
 United States Court of Appeals, Seventh Circuit.
 Submitted March 10, 1992.*
Decided March 20, 1992.
 
 Before BAUER, Chief Judge, and COFFEY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Defendant William Salazar-Soto ("Soto") was convicted of possession of cocaine with intent to distribute pursuant to 21 U.S.C. § 841(a)(1) and sentenced to 225 months in prison. He appeals his conviction. For the following reasons, we affirm.
 
 BACKGROUND
 
 2
 U.S. Customs Agent Joseph Alkus received a tip from a reliable confidential informant that the driver of a 1989 Toyota Camry Illinois license plate RE2772 was involved in drug trafficking and money laundering. The car was registered to defendant Soto and had been purchased by him with cash. On October 23, 1989, Agent Alkus located the maroon Camry at 425 W. Belmont in Chicago. Soto was under surveillance from October 23, 1989 through the day of his arrest, October 31, 1989.
 
 
 3
 On October 31, 1989, Agent Alkus obtained search warrants to search the second floor apartment at 425 W. Belmont, the Camry and the Bronco. At approximately 7:30 p.m. Alkus and another agent proceeded to 425 W. Belmont where they observed Soto parking the Bronco and entering 425 W. Belmont. The agents gained access to the building, proceeded to the second floor and announced they were police. The occupant's of the east apartment eventually opened the door and shouted "He's running out the back door." Alkus and other agents broke down the door of the west apartment. Meanwhile, Agent Ernest Magna began following Soto who was walking east on Belmont. Approximately a half block south of Belmont on Sheridan Road, Manga drew his gun, ordered Soto to kneel, handcuffed him and escorted him back to 425 W. Belmont.
 
 
 4
 The search of the apartment at 425 W. Belmont uncovered inter alia pagers, mobile telephones, approximately $300,000 cash, a money counting machine, a business card with equations on the back, booklets with handwritten numerical notes, and a Columbian passport issued to Soto. After obtaining the keys to the Camry, the agents recovered approximately 60 one-kilogram packages of cocaine in two boxes located in the trunk.
 
 
 5
 Upon being informed that he was under arrest because of the cocaine found in the Camry, and having been Mirandized, Soto immediately stated, "No, no, no; I don't own that vehicle. I'm in the process of selling the vehicle." Minutes later, Soto stated that there was a briefcase which contained some documents. He was then interviewed for personal history which revealed that he had lived at 425 W. Belmont for over a year and was unemployed.
 
 PRE-TRIAL MOTION
 
 6
 Soto brought a pre-trial motion to quash the arrest, suppress evidence and suppress statements. After an evidentiary hearing, the district court ruled that Soto was arrested when he was stopped by Agent Magna on Sheridan Road, and that there was probable cause for the warrantless arrest. In addition, the district court suppressed all statements by Soto between his arrest on Sheridan Road and being given his Miranda warnings in the apartment.
 
 ANALYSIS
 
 7
 On appeal, Soto argues that 1) there was not probable cause for his arrest on Sheridan Road; 2) his right to remain silent was violated by use of his post-Miranda statements; 3) the district court erred in permitting certain expert testimony; and 4) there was insufficient evidence to convict him of possession of cocaine with intent to distribute.
 
 I. Probable Cause
 
 8
 In determining whether there was probable cause for the arrest, we rely on the district court's factual findings unless they are clearly erroneous. United States v. Towns, 913 F.2d 434, 439 (7th Cir.1990). However, we review the legal determination that there was probable cause under a de novo standard. Towns, 913 F.2d at 439. Although defendant contends that the factual findings were erroneous, his argument does not contest the facts but instead contests the application of the law to the facts.
 
 
 9
 Probable cause exists where the facts and circumstances within the knowledge of the agent are based on reasonable trustworthy information and are sufficient to warrant a prudent person believing that the suspect has committed or is committing an offense. Id. at 439, (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). We are guided by the "factual, practical considerations of everyday life upon which reasonable prudent [persons], not legal technicians, act." Towns, 913 F.2d at 439 (quoting United States v. Watson, 587 F.2d 365, 368 (7th Cir.1978), cert. denied, Davis v. United States, 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979)).
 
 
 10
 We find that the district court's factual findings were not clearly erroneous and that the agents had probable cause to arrest Soto. After receiving information from a reliable informant that the driver of the Camry was involved in drug trafficking, the agents determined that the car was registered in Soto's name. After ten days of survellance they confirmed that he had sole possession, control and indicia of ownership of the vehicle.
 
 
 11
 During the surveillance, Soto was observed frequently changing cars, driving in an evasive manner, meeting clandestinely on several occasions with Latin men who would transfer packages to and from Soto's car, accompanying a Latin male who threw a package and keys to an individual in the 425 W. Belmont building, and exiting his apartment through a back entrance when police announced their arrival. All of this corroborates the information provided by the informant. United States v. Marin, 761 F.2d 426, 431-433 (7th Cir.1985) (probable cause existed where DEA agents had personal contact with informant, observed defendant driving two automobiles and observed circuitous driving as an obvious counter-surveillance ploy). Contrary to Soto's contention, these activities are not to be considered in isolation. Agents are justified in drawing on their experience to evaluate actions in the context of information supplied by a known confidential informant. United States v. Colonia, 870 F.2d 1319, 1323 (7th Cir.1989).
 
 
 12
 Soto contends that because the agents did not arrest him when he entered the premises pursuant to Michigan v. Summers, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), they did not have probable cause. This argument is meritless. Summers does not require police to detain a suspect on his premises prior to execution of a search warrant; it merely permits police to do so. Similarly, Soto's contention that because the agents did not procure an arrest warrant, they lacked probable cause is also without merit.
 
 
 13
 Given the totality of the circumstances, probable cause existed for the warrantless arrest of defendant on suspicion of drug trafficking.
 
 II. Post-Miranda Statements
 
 14
 Soto argues that his post-Miranda statements were coerced. According to Soto, Agent Olivier's statement informing him that, because 60 kilograms of cocaine was found in his car, he was under arrest, constituted an interrogation in violation of Miranda and therefore his subsequent statements were coerced. We reject this contention.
 
 
 15
 We review the question of voluntariness de novo. United States v. Hawkins, 823 F.2d 1020, 1023 (7th Cir.1987). "Interrogation" under Miranda includes any "actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 1682 (1980). Agent Oliver's statement explaining that Soto was under arrest was conduct "normally attendant to arrest." The statement was informative and not intended to elicit an incriminating response. Soto's statement immediately thereafter was a response to being arrested, not the product of compulsion and was therefore voluntary.
 
 
 16
 Furthermore, there is no evidence that Soto's subsequent statement regarding his briefcase was prompted by any action on the part of the officers. In addition, the background questions posed by Agent Valdez did not constitute "interrogation" for Fifth Amendment purposes. Robinson v. Percy, 738 F.2d 214, 219 (7th Cir.1985). When Soto stated that did not want to talk anymore, the interview ceased.
 
 
 17
 We reject Soto's contention that because he exercised his right to remain silent before receiving his Miranda rights, his subsequent statements were not volunteered. Although after a defendant exercises his right to remain silent, he may not be interrogated, he is still free to change his mind and volunteer information. United States v. Thoma, 726 F.2d 1191, 1195 (7th Cir.1984). The record is devoid of evidence that the officers employed coercive tactics after defendant first stated that he did not want to talk.
 
 
 18
 Soto also contends that because he invoked his right to remain silent, he did not knowingly and intelligently waive his Miranda rights. Because Soto did not raise this issue below and the trial judge had no opportunity to consider the claim, it is deemed waived on appeal. United States v. Towns, 913 F.2d 434, 438 (7th Cir.1990).
 
 III. Expert Witness
 
 19
 Soto claims that the district court erred in admitting the testimony of F.B.I. Special Agent Arthur R. Eberhart regarding the method of sales generally used by drug dealers. Agent Eberhart examined the calculations contained on documents seized from 425 W. Belmont and concluded that they were narcotics ledgers. Eberhart testified that numbers on a narcotics ledger begin with high numbers, deductions are made, and then a large addition is made to the small balance. He explained that this is because drugs are normally sold on a consignment basis at the wholesale level. At this point, the defense objected, arguing that Eberhart was not an expert in drug trafficking. The objection was overruled, and Eberhart went on to further explain how a trafficker purchases and resells drugs.
 
 
 20
 The district court did not abuse its discretion in admitting Eberhart's testimony explaining the nature of drug sales. United States v. Solis, 923 F.2d 548, 550 (7th Cir.1991). Soto concedes that Eberhart is an expert trained in analyzing the business records of illegal enterprises. This expertise could not be obtained without understanding the operations of the underlying business. Eberhart's testimony was limited to explaining why the numbers on the documents from 425 W. Belmont were indicative of a narcotics ledger. Therefore, it was within the area of his expertise.
 
 IV. Sufficiency of the evidence
 
 21
 Soto's final contention is that the evidence was insufficient to establish that he had possession of the 60 kilograms of cocaine with intent to distribute. He contends that the government did not prove that he exercised dominion and control over the Camry to the degree necessary to establish constructive possession of the 60 kilograms of cocaine.
 
 
 22
 We review sufficiency of the evidence claims deferentially, considering the evidence and all reasonable inferences in the light most favorable to the government. United States v. Motley, 940 F.2d 1079, 1084 (7th Cir.1991). A conviction will be reversed only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Jewel, 947 F.2d 224, 230-231 (7th Cir.1991).
 
 
 23
 The evidence when viewed in a light most favorable to the government showed that Soto constructively possessed the 60 kilograms of cocaine found in the Camry, which is sufficient to support a conviction under 21 U.S.C. § 841(a). United States v. Garrett, 903 F.2d 1105, 1112 (7th Cir.1990), cert. denied, 111 S.Ct. 272, 112 L.Ed.2d 227 (1991). Soto purchased the car with cash, the car was registered in his name and no one other than defendant was seen in the car during the ten day surveillance. According to the testimony of an Evergreen Parking lot attendant, Soto was the last person to drive the car before it was searched. The keys were found in the apartment Soto had exited when the police announced their arrival. This evidence sufficiently established that Soto had ownership, dominion or control over the cocaine such that the jury could conclude that Soto constructively possessed the cocaine. Garrett, 903 F.2d at 1112.
 
 
 24
 Soto's remaining challenges to the sufficiency of the evidence are baseless. He claims that his connection with the 425 W. Belmont apartment was so tenuous that he could not be linked to the evidence there. Soto admitted that he lived at the apartment, his name was on the mailbox, he paid the rent for November 1989, and he was observed frequently entering and exiting the building.
 
 
 25
 Soto also challenges the credibility of the parking lot attendant who testified that defendant parked the Camry at 5:30 p.m. on October 31, 1989. We will not disturb credibility judgments made by a jury absent extraordinary circumstance. United States v. Gonzalez, 933 F.2d 417, 437 (7th Cir.1991). No such circumstance exists here.
 
 
 26
 Finally, Soto contends that because a handwriting expert could not definitively state that certain documents had or had not been authored by him, and because there were no identifiable fingerprints on the cocaine, there was reasonable doubt as to his guilt. Both of these matters were put to the jury, and balancing them against the weight of significant incriminating evidence, the jury convicted him.
 
 CONCLUSION
 
 27
 For the foregoing reason, defendant Soto's conviction of possession of cocaine with intent to distribute is
 
 
 28
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs