64 F.3d 665
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Olivia WILLIAMS, Defendant-Appellant.
 No. 95-1135.
 United States Court of Appeals, Seventh Circuit.
 Argued Aug. 1, 1995.
Decided Aug. 9, 1995.
 
 1
 Before Posner, Chief Judge, and Easterbrook and Rovner, Circuit Judge S.
 
 ORDER
 
 2
 On July 30, 1994, Olivia Williams was convicted by a jury of advising and aiding in the preparation of a fraudulent income tax returns in violation of 26 U.S.C. Sec. 7206(2) and on December 22, 1994 sentenced to twenty one months' imprisonment. Williams appeals claiming she was convicted based upon insufficient evidence and inadmissable testimony.
 
 Statement of the Facts
 
 3
 Olivia Williams was self employed, in part, as a tax preparer. During the tax filing season, Williams would prepare taxes for individuals, many of whom worked as truck drivers. Typically, she would pick up tax records from her clients in Chicago and prepare the tax returns at her home. On occasion Williams would prepare tax returns at clients' homes. From 1986 to 1989, Williams prepared about 75 tax returns a year. IRS records list Olivia Williams as the tax preparer on approximately 250 returns. Joe's Garage, one of Williams' clients, served as a network for other clients, including three of the four taxpayers involved in this appeal. Williams' other clients were referred to her by current clients.
 
 
 4
 The majority of training that Williams received in tax preparation came from taking two H & R Block courses. In 1982, Williams attended and completed a two month training course and in 1985, Williams attended, but did not complete, a second H & R Block course. Williams took a number of accounting courses and at least one income tax class during her course work at Loop College and the Illinois School of Commerce in the early 1980's. Williams testified that she also studied on her own.
 
 
 5
 In 1990, the IRS audited the tax returns of Joe Alvarez, the owner of Joe's Garage. After finding numerous errors involving double deductions, inflated expenses and non-deductible credits, the IRS initiated an audit project to examine the other returns done by Alvarez' tax preparer, Williams. Sixty-nine returns involving forty-four taxpayers were audited. The IRS agent who headed the investigation testified at sentencing that the audits for which the IRS had results showed every tax return contained errors. Fifteen of the returns that were audited formed the basis of the indictment. A jury found Williams guilty of tax fraud for nine of the fifteen counts charged in the indictment.
 
 Sufficiency of Evidence
 
 6
 Williams argues her conviction was based upon insufficient evidence. A defendant seeking to challenge the evidentiary sufficiency of her conviction bears a heavy burden; we will reverse a conviction only if no rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt and we review the evidence and all reasonable inferences in a light most favorable to the government. United States v. Motley, 940 F.2d 1079, 1084 (7th Cir. 1991). See also Jackson v. Virginia, 430 U.S. 307, 319 (1979). Under 26 U.S.C. Sec. 7206(2), it is a felony to aid or assist in the preparation of a fraudulent or materially false tax return.[1] To establish a violation of Sec. 7206(2) the government must prove that the defendant acted willfully and intended to defraud or mislead the Internal Revenue Service. United States v. Dunn, 961 F.2d 648, 651 (7th Cir. 1992); United States v. Hooks, 848 F.2d 785, 788-89 (7th Cir. 1988).
 
 
 7
 Williams argues, correctly, that the government's case rests on showing false entries on the nine tax returns. According to Wilson the false entries themselves do not show willful misconduct; instead, she argues that something in the surrounding circumstances such as a contingency fee arrangement based upon the amount of the tax refund, prior warnings of deficient preparation or a history of correct filings must be present to create an inference of wilful misconduct. We are unpersuaded by this argument. The issue of intent or wilfulness is often proven by circumstantial evidence. See United States v. Dunn, 961 F.2d 648, 651 (7th Cir. 1992) (evidence sufficient to show willful action when defendant knew investors did not act as distributors for company's products even though he listed them as distributors on Schedule C); United States v. Kelley, 864 F.2d 569, 575 (7th Cir. 1989) (evidence sufficient to show willfulness when defendant told investors to keep an agreement that impacted on the legality of a tax shelter secret from the IRS).[2] The question in a sufficiency challenge is not whether other circumstances (contingency fee, prior warnings, history of correct filings) would have created a stronger inference, but whether the evidence was so lacking that "no rational trier of fact" could have found the essential elements of the offense charged beyond a reasonable doubt. The inference that the jury drew from, for example, the false entries for child care expenses on the Jose and Celia Delgadillo's 1988 return, when Celia Delgadillo testified that she had no child care expense, was that Williams fabricated the expenses. This inference is not irrational.
 
 
 8
 Nor were the inferences that the jury drew from the evidence of other false entries irrational or unfounded. The government presented testimony for each of the nine returns that the taxpayers involved gave Williams receipts totalling less than the expenses Williams claimed and that Williams fabricated many other expenses to create fraudulent deductions or tax credits. The jury also heard testimony that when Leopoldo Parra told Williams he did not have receipts for the deductions Wiliams listed on his return, Williams said, "Oh, don't worry, you're allowed these deductions." Williams countered the government's evidence by attacking the credibility of the witnesses and testifying that two of the taxpayers misled her about owning their trucks, that many of the taxpayers gave her verbal estimates of their expenses and promised to produce documentation and that all six witnesses simply lied when they testified that Williams fabricated entries on their tax returns. Apparently, the jury choose not to believe Williams, an assessment that is within the purview of the jury, not the appellate court. United States v. Mojica, 984 F.2d 1426, 1435 (7th Cir.), cert. denied, 113 S. Ct. 2433 (1993); United States v. Piaz, 905 F.2d 1014, 1021 (7th Cir. 1990), cert. denied, 499 U.S. 924 (1991).
 
 Admission of Hearsay
 
 9
 On the second day of testimony, Revenue Agent Henry Weichman testified for the prosecution. During cross-examination, defense counsel asked Weichman, hypothetically, if both a taxpayer and tax preparer had limited knowledge, whether a situation similar to Williams' could occur. The following exchange ensued.
 
 
 10
 A. ... When I interviewed Miss Olivia Williams she told me she went to H & R Block school, and she told me, according to her own words, she did about 25 to 30 clients per year, and we found out she did more than that. Okay. When I accepted the case in the investigation I don't just jump in the case; we have other stuff to do besides that. I talked to the agent who referred the case from Chicago and he told me he has audited approximately over a hundred, and they're all fraudulent returns. I don't have time to investigate, talk to everyone.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 Q When you use the word fraudulent return, you said all of them are fraudulent returns; basically what you're saying here is that none of them were done correctly?
 
 
 14
 A To the best on my recollection, that's correct.
 
 
 15
 Q Not one out of 100?
 
 
 16
 A I have never seen one of them [and I am relying] on basically the agent who helped me on the case, that's correct.
 
 
 17
 Q Okay. Again, this matter that we're here today about has to do with if Olivia Williams knew what she was doing right?
 
 
 18
 A That's correct.
 
 
 19
 (Trail Transcript 6/29/30) (emphasis added). During closing arguments, Williams' counsel referenced this portion of Weichman's testimony, stating: "Mr. Weichman also said that not one -- not one return was done correctly. I mean I would say in order to somehow impute a fraudulent intention you'd have to at least show it was done right at least once; basically you have to show that a pattern was established. But they didn't even show one return done correctly." (Trial Transcript 6/30/94 at 381).
 
 
 20
 On appeal, Williams challenges the admission of Weichman's testimony that the agent who investigated the case told Weichman that over a hundred returns were audited, all of which were fraudulent. Because Williams did not object to Weichman's statement at trial, our review of the admission of the challenged testimony is for plain error only. United States v. Kellum, 42 F.3d 1087, 1092 (7th Cir. 1994); Fed. R. Crim. P. 52(b). "A plain error is one that results in an actual miscarriage of justice, which implies that the defendant probably would not have been convicted but for the erroneously admitted evidence." United States v. Nolan, 910 F.2d 1553, 1561 (7th Cir. 1990) (citations omitted), cert. denied, 499 U.S. 942 (1991). The burden is on the defendant to demonstrate that "plain error affected his substantial rights as well as the fairness, integrity, or public reputation of judicial proceedings." Kellum, 42 F.3d at 1093 (quoting United States v. McGill, 32 F.3d 1138, 1142 (7th Cir. 1994)).
 
 
 21
 When a defendant makes a tactical decision not to object to the admission of testimony, this court is particularly reluctant to find plain error. Hollenback v. United States, 987 F.2d 1272, 1281 (7th Cir. 1993); United States v. Wynn, 845 F.2d 1439, 1443 (7th Cir. 1988). Counsel did not move to have Weichman's comment stricken or ask the court to issue a limiting instruction but continued to question Weichman in order to elicit testimony that none of the audited returns he knew of were done correctly. During closing argument counsel used the challenged portion of Weichman's testimony to support Williams' defense theory of ignorance and incompetence. Williams cannot now argue on appeal that counsel's tactical decision to use Weichman's statement to support her defense theory amounted to plain error. Williams' conviction did not hinge on Weichman's testimony and we find that the admission of Weichman's testimony did not result in the miscarriage of justice or amount to plain error.[3] See Hollenback, 987 F.2d at 1281 (admission of testimony about defendant's drug use not plain error when defense counsel apparently made tactical decision to waive objections believing testimony supported defense theory of personal and social drug consumption); United States v. Kane, 944 F.2d 1406, 1412 n. 2 (7th Cir. 1991) (failure of district court to give a limiting instruction regarding impeachment testimony not plain error where testimony, even if taken for the truth of the matter asserted, could have as easily support defendant's version of events as prosecution's); Wynn, 845 F.2d at 1443 (7th Cir. 1988) (admission of evidence regarding prior investigation of defendant not plain error where defense counsel decided not to object as part of a trial strategy to show defendant was victim of a frame-up).
 
 Conclusion
 
 22
 Neither of Williams' challenges support overturning the jury's verdict. Accordingly, the disposition of the district court is AFFIRMED.
 
 
 
 [1]
 Section Sec. 7206 reads in pertinent part:
 Any person who ... [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, or a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document ... shall be guilty of a felony.
 26 U.S.C. Sec. 7206(2).
 
 
 [2]
 See also United States v. Jagim, 978 F.2d 1032, 1041 (8th Cir. 1992), cert. denied, 113 S. Ct. 2447 (1993) (evidence sufficient to show willfulness when record contained evidence of numerous false tax documents and recordings made by IRS agent); United States v. Kouba, 822 F.2d 768, 773 (8th Cir. 1987) (evidence sufficient to show willfulness when record revealed defendant inflated deductions for clients and failed to file own returns)
 
 
 [3]
 In addition, when there is sufficient evidence to support the conviction, excluding the challenged testimony, plain error has not occurred. Kellum, 42 F.3d at 1094. See also United States v. Field, 875 F.2d 130, 134-35 (7th Cir. 1989) (admission of challenged 404(b) evidence not plain error where non-challenged evidence was sufficient to convict); United States v. Kerley, 838 F.2d 932, 937 (7th Cir. 1988) (no plain error where defendant's guilt so clear that conviction was certain even if error had not been committed). Having already found Williams' challenge to the sufficiency of the evidence to be without merit, we are confident that any error in the admission of Weichman's testimony was harmless